**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

**NORDICA S.p.A.,**
**NORDICA USA CORP.**

   **v.**                                    06-CV-451-PB
                                             Case No. 2009 DNH 118
**ICON HEALTH & FITNESS, INC.**

### MEMORANDUM AND ORDER

Nordica S.p.A. and its wholly owned subsidiary, Nordica USA, ("Nordica") have filed an action against ICON HEALTH & FITNESS ("ICON").  Nordica alleges that ICON has violated the terms of a settlement agreement, reached between the two in the Spring of 2003, addressing ICON's use of a trademark.  The parties have filed cross motions for summary judgment.

### I.  BACKGROUND

Nordica S.p.A. and Nordica USA manufacture, supply, and sell skis, ski boots, and a variety of products related to winter sport under the "NORDICA" trademark.  ICON manufactures and distributes fitness equipment and apparel; it also owns the fitness brand "NordicTrack," which it acquired in 1999.  Under the NordicTrack brand, ICON sells fitness equipment such as treadmills and elliptical machines, as well as fitness apparel.

As part of ICON's business model, it has sought to register the mark "NORDICTRACK" in various jurisdictions, and pursuant to this end, it applied for three registrations, one in Uruguay and two in Europe, in 2003.  In its applications, ICON indicated that it was seeking to use the trademark in connection with particular uses recognized by the international system of trademark classification, namely in connection with those products falling within the parameters of International Classes 25 and 28. Nordica objected to ICON's applications.  (Compl., Doc. No. 1, at 1-2; Def.'s Mot. for Summ. J., Doc. No. 29, at 3; Pls.' Cross Mot., Doc. No. 38, at 2.)

The parties ultimately reached an agreement (the "Agreement") and resolved the matter.  The Agreement acknowledged that the controversy surrounded ICON's trademark applications, and identified them as follows:

-- Uruguayan TM Application No. 310.3151 NORDICTRACK, claiming the entire international class 28;

-- Community (European Union) TM Application No. 1.175.751 NORDICTRACK claiming the following goods:  "Footwear, headgear" (international class 25) and "Games and playthings; gymnastic and sporting articles not included in other classes; decorations for Christmas trees" (International class 28);

-- Community (European Union) TM Application No. 1.422.542 NORDIC TRACK claiming the following

-2-

goods: "Clothing" (international class 25). . . .
(Agreement, Doc. No. 1-2, at 1.)  The Agreement further stated
that "although ICON deems that there is no likelihood of
confusion between its trademarks NORDICTRACK and NORDIC TRACK and
the NORDICA trademark of NORDICA S.p.A., the parties wish to
resolve the controversies between them."  (Id.)  ICON agreed to a
variety of provisions, among them, section 1(b), wherein it
promised that it "shall register and/or use the trademarks
NORDICTRACK and NORDIC TRACK as well as any other mark including
the word NORDIC only in connection with the goods listed in Annex
A of this Agreement."  (Id.)

As for the registration applications that initiated the
Agreement, ICON agreed in section 1(g) to restrict the Uruguayan
and European Union applications "to the goods of international
class 28 listed in Annex A of this Agreement."  (Id. at 2.)  ICON
further agreed in section 1(h) to restrict the European Union
applications to the "goods of international class 25 listed in
Annex A of this Agreement."  (Id.)  In response, Nordica agreed
to withdraw its objections to ICON's Uruguayan and European Union
applications.  Nordica further agreed that "it shall not object
to ICON's registration and/or use of the trademarks NORDICTRACK

and NORDIC TRACK if such registration and/or use are in compliance with the terms of point[] 1(b) . . . of this Agreement." (Id.)  The Agreement closed by stipulating, among other things, that

> 4.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto, their related companies, successors, assignees, licensees, parents, subsidiaries . . . and employees.

> 5.  This Agreement shall be effective worldwide.

(Id. at 3.)  The Agreement is signed by representatives of both Nordica S.p.A. and ICON.  Annex A, which is attached the Agreement, reads as follows:

> International Class 25:  "men's shorts, women's shorts, socks, women's bras, women's tank tops, towels, gloves for indoor fitness, women's vests for indoor fitness, men's vests for indoor fitness, men's & women's long sleeve shirts, men's tank tops, men's & women's short sleeve shirts, women's spandex pants/shorts, men's leggings (spandex)".

> International Class 28:  "gymnastic and sporting articles, except for those used in relation to outdoor winter sports, not included in other classes: exercise equipment of all types except for that used in relation to outdoor winter sports".

(Id. at 4.)

In its current Complaint, Nordica alleges that since signing the Agreement, ICON has engaged in behavior contrary to the Agreement's terms.  In Count 1, a claim for breach of contract,

Nordica alleges that ICON has "materially breached its obligations under the Contract by filing applications and/or obtaining registrations for certain marks beyond those permitted by the Contract." (Compl., Doc. No. 1, at 3.) In particular, Nordica identifies two trademark applications filed in the United States Patent and Trademark office by ICON IP, a subsidiary of ICON. Nordica alleges that these applications reveal ICON's "pursuit of trademark applications beyond the scope of goods permitted by the Contract for the underlying marks sought to be registered." (Id.) Nordica also points to a second class of violative behavior as well, namely ICON's "advertising and offering for sale goods that exceed the schedule of goods allowed for ICON's use on Annex A." (Pls.' Cross Mot., Doc. No. 38, at 7.) Nordica claims that it has reached out to ICON in an effort to secure its compliance with the Agreement, but those contacts have proved unfruitful. (Compl., Doc. No. 1, at 4.) In responding to ICON's conduct, Nordica maintains that it has "had to engage in various adversarial proceedings with Defendant in the United States and in foreign trademark tribunals." (Id. at 3.) In Count 2, Nordica alleges that ICON has violated the New Hampshire Consumer Protection Act, RSA 358-A. In Count 3, it

brings a claim for Attorneys' Fees.

Nordica seeks relief in a variety of forms.  It seeks to enjoin ICON from pursuing trademarks or using any marks on goods or services beyond the scope of the Agreement.  It also requests that ICON "be ordered to engage in specific performance of the Contract and be ordered to abandon any trademark applications or cancel any registrations . . . which are beyond the scope of that permitted by the Contract."  (Id. at 6.)  Nordica seeks money damages for ICON's failure to comply with the Agreement and for the costs that resulted from Nordica's having to mount challenges around the world to ICON's pursuit of registrations that, if granted, would violate the Agreement.  Nordica requests that an accounting be held for the profits ICON earned on products sold in violation of the Agreement.  Finally, Nordica seeks money damages equal to its actual damages pursuant to RSA 358-A, treble damages pursuant to RSA 358-A:10, as well as reasonable attorneys' fees and costs.  (Id.)

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). A party seeking summary judgment must first identify the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The evidence submitted in support of the motion for summary judgment must be considered in the light most favorable to the nonmoving party, indulging all reasonable inferences in its favor. See Navarro v. Pfizer Corp., 261 F.3d 90, 93-94 (1st Cir. 2001). The burden then shifts to the nonmoving party to "produce evidence on which a reasonable finder of fact, under the appropriate proof burden, could base a verdict for it; if that party cannot produce such evidence, the motion must be granted. Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996); see Celotex, 477 U.S. at 323. On cross motions for summary judgment, the standard or review is applied to each motion separately. See Am. Home Assur. Co. v. AGM Marine Contractors, Inc., 467 F.3d 810, 812 (1st Cir. 2006).

### III.   **ANALYSIS**

**A.   COUNT 1: BREACH OF CONTRACT**

ICON's challenges to Nordica's breach of contract claim can be grouped into three categories.  First, it argues that Nordica is not entitled to summary judgment because the Agreement does not unambiguously bar it from engaging in the conduct on which the count is based.  Next, it contends that Nordica's evidence is deficient, either because it pertains only to ICON's subsidiary, ICON IP, or because the evidence has not been properly authenticated.  Finally, it argues that Nordica is not entitled to the relief it seeks even if it could prove that ICON breached the Agreement.  I address each category of arguments in turn.

**1.   The Agreement**

Nordica bases its breach of contract count primarily on section 1(b) of the Agreement, which states that ICON "shall register and/or use the trademarks NORDICTRACK and NORDIC TRACK as well as any other mark including the word NORDIC only in connection with the goods listed in Annex A of this Agreement." (Agreement, Doc. No. 1-2, at 1.)[1]  According to Nordica, this

---

[1]  The parties dispute the law that should govern their contract dispute.  In advocating for the application of Utah law, ICON has failed to demonstrate where and to what extent the

provision applies worldwide and expressly bars ICON and its
subsidiary from engaging in the conduct alleged in the Complaint.
Although section 1(b) does not include an express geographical
limitation, ICON argues that the section should be construed in
context to cover only the then-pending Uruguayan and European
Union applications.  It also cites parol evidence, which it
claims supports its position that the Agreement is, at the very
least, ambiguous as to its geographical scope.  (Def.'s Objection
to Cross Mot., Doc. No. 52, at 7, 12-13.)

I am unpersuaded by ICON's arguments and agree with Nordica
that the Agreement is neither as narrow as ICON suggests nor
ambiguous in its application to the conduct at issue here.
First, I am unconvinced that section 1(b) was intended only to
resolve the parties' disagreements concerning the then-pending
Uruguayan and European Union applications.  The parties' dispute
with respect to those specific applications was resolved in
sections 1(g) and 1(h), wherein ICON agreed to limit its
applications to the classes of goods specified in Annex A.
(Agreement, Doc. No. 1-2, at 2.)  Thus, ICON's interpretation is

---

relevant Utah law conflicts with New Hampshire law.  Absent any
ascertainable conflict of law, the law of the forum state (in
this case, New Hampshire) applies.  See A.M. Capen's Co. v. Am.
Trading & Prod. Corp., 202 F.3d 469, 472 n.6 (1st Cir. 2000).

problematic because it would require me to accept that the
Agreement was purposefully made redundant.  See Medlin Const.
Group, Ltd. v. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006) ("A
reasonable interpretation must 'assure that no contract provision
is made inconsistent, superfluous, or redundant.'" (internal
citations omitted)).  Second, even if I were to overlook the
redundancy problem, I could not accept ICON's contention that
section 1(b) was intended to apply only in Uruguay and the
European Union because the Agreement expressly states in section
5 that "[t]his application shall be effective worldwide."  (Id.
at 3.)  Finally, ICON's reliance on parol evidence is misplaced
because a party cannot rely on such evidence to create ambiguity
that is not otherwise present in the four corners of the
document.  See  Behrens v. S.P. Constr. Co., 904 A.2d 676, 681
(N.H. 2006) ("Absent ambiguity, the parties' intent will be
determined from the plain meaning of the language used in the
agreement."); see also Ryan James Realty v. Vills. at Chester
Condo. Ass'n, 893 A.2d 661, 664 (N.H. 2006) (same).  In sum,
reading the agreement as a whole, the use of the NordicTrack
trademark in connection with goods other than those listed in
Annex A of the Agreement and in the manner charged in the

Complaint violates the Agreement's unambiguous terms.

    **2.**   **Evidence Supporting the Claimed Breach**

Having determined that the alleged conduct would violate the Agreement, I next consider whether there is sufficient evidence to attribute the charged conduct to ICON.  Proper treatment of this inquiry requires that I assess the two alleged contractual violations separately: first, the two patent applications filed by ICON IP, and second, the evidence of online marketing and sales of NordicTrack products.

Nordica argues that by filing trademark applications that exceed the scope of the Agreement, such as those filed with the United States Patent and Trademark Office, ICON IP has violated the Agreement.  (Compl., Doc. No. 1, at 3.)  Nordica argues further that because ICON IP is ICON's subsidiary, ICON is bound by ICON IP's breach.  In response, ICON argues that it cannot be held liable for the conduct of its subsidiary absent "substantial evidence that ICON used [ICON] IP's corporate form to perpetrate 'fraud or something like fraud.'"  (Def.'s Objection to Cross Mot., Doc. No. 52, at 16.)

As an initial matter, it is indisputable that the Agreement binds subsidiaries of Nordica and ICON.  Section 4 makes clear

that the "Agreement shall be binding upon and shall inure to the
benefit of the parties hereto, their related companies,
successors, assignees, licensees, parents, subsidiaries,
affiliates, agents, servants, and employees."  (Agreement, Doc.
No. 1-2, at 3.)  Thus, ICON IP is liable for breaches of the
Agreement.  Nordica takes it one step further, however, and
insists that ICON should have to answer for ICON IP's actions.
Nordica argues that ICON and ICON IP "are essentially one and the
same."  (Pls.' Cross Mot., Doc. No. 38, at 13.)  Nordica presents
evidence suggesting that ICON and ICON IP share the same
correspondence address and that ICON IP "is the holding
subsidiary for the intellectual property of ICON."  (Id.)
Nordica also argues that "ICON could have included its subsidiary
as an indispensable party in these proceedings, but after earlier
adding them as a Counterclaim Defendant, it later chose to
dismiss them."  (Pls.' Reply, Doc. No. 55, at 11.)

     In order to hold ICON liable for its subsidiary's conduct,
Nordica must demonstrate that ICON had control over ICON IP and
used that subsidiary to "promote injustice or fraud," the latter
of which is a requirement particular to New Hampshire law.  See
Goya Foods, Inc. v. Unanue, 233 F.3d 38, 43 (1st Cir. 2000)

(applying New York veil piercing principles); New Eng. Homes,
Inc. v. R.J. Guarnaccia Irrevocable Trust, 846 A.2d 502, 506
(N.H. 2004) ("When courts pierce the corporate veil, they 'assess
individual liability where the owners have used the corporate
identity to promote injustice or fraud.'"); see also Gautschi v.
Auto Body Disc. Ctr., 660 A.2d 1076, 1079 (N.H. 1995).  This
requires evidence that ICON IP lacked any corporate independence
such that it was subject to the complete domination of ICON.  See
Goya, 233 F.3d at 43; United Elec. Radio & Mach. Workers v. 163
Pleasant St. Corp., 960 F.2d 1080, 1093 (1st Cir. 1992) (applying
alter ego theory where parent corporation was vicariously liable
for subsidiary's obligations pursuant to an ERISA-regulated
health payment plan).  Nordica has failed to present evidence of
fraud, conspiracy, or some other impropriety on ICON's part with
respect to its relationship with ICON IP.  Thus, ICON cannot be
held liable for the actions of its subsidiary.

　　　Turning next to the conduct attributable to ICON, Nordica
charges that "[t]hrough its website Nordictrack.com, ICON is
currently and actively advertising and offering for sale many
goods which willfully, intentionally and flagrantly exceed the
scope of goods allowed under Annex A to the Agreement."  (Pls.'

Cross Mot., Doc. No. 38, at 13.)[2]  In particular, exhibits nine

through twenty-five are made up of printed pages from

nordictrack.com, sears.com, and overstock.com, which offer for

sale various products bearing the NordicTrack logo.  (Doc. No.

38-9 to 38-25.)  ICON attacks this evidence, arguing that it is

inadmissible because it has not been properly authenticated.

    With respect to the advertisements printed from

overstock.com and sears.com, Nordica has merely shown that

assorted "NordicTrack" branded products are being offered for

sale through those online vendors; however, this does not prove

that ICON is responsible for what appears on those websites.

Without more connecting them to ICON, the exhibits of printed

advertisements from overstock.com and sears.com are inadmissible.

    The alleged printouts from nordictrack.com, although also

inadmissible at present, are considerably further along the road

toward admission.  Nordica submits an affidavit from Chloe A.

Hecht, (Doc. No. 38-32), as well as a WHOIS report showing that

nordictrack.com is registered to ICON, (Doc. No. 38-27), to lay a

---

    [2]  In a prior Order issued on April 10, 2009, Magistrate
Judge Muirhead dismissed ICON's motion to strike claiming that
Nordica's cross motion for summary judgment, which addressed this
issue of ICON's online products, was untimely.  (Doc. No. 50.)
This Memorandum and Order does nothing to disturb that ruling,
and now addresses only the admissibility of that evidence.

foundation for admitting these documents.  Hecht's assertions
that exhibits 9, 11, 12, and 14-18 are tangible representations
of what appeared onscreen is sufficient to authenticate those
exhibits.  <u>See</u> Kenneth S. Broun, 2 McCormick on Evidence § 227
(6th ed. 2006); <u>see also</u> <u>Nightlight Sys., Inc. v. Nitelites
Franchise Sys., Inc.</u>, 2007 WL 4563875, at *6 (N.D. Ga. May 11,
2007) ("[A] proponent may authenticate a printout from a website
by . . . a witness with personal knowledge of the webpage at
issue . . . stating that the printout accurately reflects the
content of the page.")  This, however, does not make them
admissible.  For that, the ownership of nordictrack.com must be
tied to ICON through admissible evidence.

     In order to link nordictrack.com to ICON, Nordica offers
evidence of a WHOIS report showing that the registrant for that
web address is "ICON HEALTH & FITNESS, INC."  (Doc. No. 38-28.)
WHOIS reports are not sufficient to establish ownership, as
courts have recognized that such reports "merely provide contact
information for the administrator or registrant of a domain name,
and have no bearing on ownership."  <u>Dlorah, Inc. v. Nau Holdings,
Inc.</u>, 2009 WL 1107533, at *3 (D.S.D. Apr. 23, 2009); <u>see</u> <u>Atlas
Copco AB v. Atlascopcoiran.com</u>, 533 F. Supp. 2d 610, 613 n.1

-15-

(E.D. Va. 2008) (finding that the WHOIS report information about a website's registrant was "false and fictitious").  Thus, although ICON does not dispute what appears to be obvious, namely, that it is responsible for operating nordictrack.com, Nordica must take the necessary measures to establish this fact. That leaves the printouts from nordictrack.com, and to be admitted, Nordica must demonstrate that they either are not hearsay or fit into recognized a hearsay exception.  <u>See</u> <u>United States v. Heijnen</u>, 2005 WL 2271874, at *2 (4th Cir. Sept. 19, 2005) (generally, documents downloaded from the internet are hearsay).

To summarize, while the evidence set forth clearly demonstrates that ICON's subsidiary, ICON IP, has breach the terms of the Agreement, Nordica has not established that ICON can be held liable for the acts of its subsidiary.  With respect to ICON itself, Nordica has failed to produce sufficient admissible evidence to establish that ICON has breached the agreement through its own conduct.

### 3.   Remedies

Nordica requests that ICON "be ordered to engage in specific performance of the Contract and be ordered to abandon any

trademark applications . . . and immediately be ordered to discontinue the use of any marks which are beyond the scope of that permitted by the Contract." (Compl., Doc. No. 1, at 6.) Additionally, Nordica seeks an accounting, as well as damages.

Under both New Hampshire and Utah law, specific performance is an adequate remedy when one party is in breach of a settlement agreement. Poland v. Twomey, 937 A.2d 934, 937 (N.H. 2007) (specific performance is appropriate relief for violations of enforceable settlement agreement); Sackler v. Savin, 897 P.2d 1217, 1220 (Utah 1995) (settlement agreements are favored by law and may be summarily enforced . . . [and] are governed by rules applied to general contract actions).[3] Thus, if Nordica demonstrates that ICON has breached the terms of the Agreement, specific performance would be an appropriate remedy.

Nordica also asserts a claim for damages, but because that claim turns on disputed facts, it is not appropriate for summary judgment. Nordica has shown the costs and attorneys' fees incurred in fighting ICON IP's registration applications, but, as noted above, ICON is not liable for that conduct. Nordica also

---

[3] Nordica has not sufficiently addressed the applicability of an accounting to the facts of this case. Thus, I do not determine whether an accounting is an appropriate remedy in the present case.

fails to put forth sufficient evidence to support a damage award for dilution, confusion, or loss of good will.  It cites the breaching party's potential to cause "irreparable damage to the goodwill of trademarks," but fails to muster any precise evidence in support of that claim.  (Pls.' Cross Mot., Doc. No. 38, at 10.)  The same is true of dilution and confusion, and absent such evidence, ordering their payment at this stage would be premature.[4]

**B.    COUNT 2: NEW HAMPSHIRE CONSUMER PROTECTION ACT**

Nordica alleges that ICON "has filed applications and/or obtained registrations and/or used marks that are confusingly similar to those utilized by the Plaintiff," and therefore,

---

[4]   ICON alleges that Nordica has failed to satisfy the amount in controversy requirement of a diversity action.  28 U.S.C. § 1332(a) ($75,000).  When specific performance is the desired remedy, the amount in controversy requirement is satisfied if "either the 'direct pecuniary value' of the right the plaintiff seeks to enforce . . . or the cost to the defendant of complying with any prospective equitable relief exceeds $75,000."  Lee Sch. Lofts, L.L.C. v. Amtax Holdings 106 L.L.C., 2008 WL 4936479, at *3 (E.D. Va. Oct. 29, 2008) (internal citations omitted).  Here, Nordica has made a good faith effort in setting out the strength and legacy of the Nordica name and the threat that ICON's alleged breaches pose to it.  Although the precise amount of harm has not been established, which prevents a damages award at this stage, it is sufficient to satisfy the statutory requirement.  See St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288-89 (1938).

ICON's "willful breach of the Contract constitutes an 'unfair and deceptive act or practice in the conduct of trade or commerce within New Hampshire' under the Consumer Protection Act." (Compl., Doc. No. 1, at 4.)  ICON argues that Nordica has failed to put forth sufficient evidence to support its claim.

The Consumer Protection Act is not applicable to "ordinary" breach of contract actions.  New Hampshire v. Sideris, 951 A.2d 164, 168 (N.H. 2008).  Rather, it proscribes unfair and deceptive trade practices, specifically, "causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another."  N.H. Rev. Stat. Ann. § 358-A:2.  Proof of actual confusion or misrepresentation is not required.  § 358-A:11.  In this case, Nordica alleges that ICON's alleged breaches - if permitted to continue - will do further harm to Nordica's reputation and good will.  Ultimately, this determination can only be made after careful assessment of the facts, thereby making this matter unfit for resolution at this stage of the litigation.  See Pacamor Bearings, Inc. v. Minebea Co., 918 F. Supp. 491, 501 (D.N.H. 1996) ("[P]laintiffs

bear the burden of demonstrating commercial detriment in the
alleged unfair competition; that is, '(a) the representation is
material, in that it is likely to affect the conduct of
prospective purchasers; and (b) there is a reasonable basis for
believing that the representation has caused or is likely to
cause a diversion of trade from the other or harm to the other's
reputation or good will,' . . . a fact-sensitive inquiry better
suited to determination after trial by jury.") (internal
citations omitted).  Both motions for summary judgment as to
Count 2 are denied.

**C.    COUNT 3: ATTORNEYS' FEES**

        Nordica's final count is a common law claim for attorneys'
fees.  New Hampshire common law empowers courts to depart from
the "general rule that parties pay their own fees . . . when
overriding considerations so indicate."  Harkeem v. Adams, 377
A.2d 617, 619 (N.H. 1977).  A party who acts in bad faith is one
such consideration.  Courts have found bad faith where one party
acts "'vexatiously, wantonly, or for oppressive reasons,'; where
the litigant's conduct can be characterized as unreasonably
obdurate or obstinate; and where it should have been unnecessary
for the successful party to have brought the action."  Id.

-20-

(internal citations omitted).

At present, issues of material fact with respect to this determination remain in genuine dispute.  ICON itself acknowledges this reality, as it argues that at "a minimum, drawing all inferences in ICON's favor, a reasonable juror could conclude that ICON's litigation conduct has not been 'patently unreasonable.'"  (Def.'s Obj. to Cross Mot., Doc. No. 52, at 23.) It would therefore be improper to grant a motion for summary judgment on Count 3 at this time.

### IV.   CONCLUSION

ICON's motion for summary judgment (Doc. No. 28) and Nordica's cross-motion for summary judgment (Doc. No. 39) are denied.  This ruling is without prejudice to Nordica's right to file an amended complaint naming ICON IP as a defendant and to establish the evidentiary foundation for the website advertising pages as evidence at a later date.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 11, 2009

cc:  Burton S. Elurich, Esq.

-21-

James F. Laboe, Esq.
Jonathan Lax, Esq.
Larry Laycock, Esq.
Robyn Phillips, Esq.
L. Rex Sears, Esq.